IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MATTHEW J. SHARP, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.; and BANK OF AMERICA CORPORATION,<br><br>Defendants. | Case No. 1:19-cv-05223<br><br>Honorable Charles P. Kocoras |

**MEMORANDUM IN SUPPORT OF DEFENDANTS BANK OF AMERICA, N.A. AND BANK OF AMERICA CORPORATION'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

**I.  INTRODUCTION**

Plaintiff's Complaint alleges that he incurred overdraft fees using "decoupled" debit cards issued by two non-bank retail chains: Target and Speedway. *See* Compl. ¶¶ 31–36. The Target REDcard is governed by its own terms and conditions, which make clear that "[t]his Card . . . is not issued by the financial institution that maintains the deposit account that you have linked to." *See* Declaration of William K. Pao, Ex. 1, Target Debit Card Agreement & Error Resolution Notice ("Target Agreement") at 1.[1]  Similarly, the Speedy Rewards Pay Card advises

---

[1] In ruling on a motion to dismiss, a court may consider documents central to a plaintiff's claims, even if they are not attached to the complaint. *See Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). Because the Complaint centers on the imposition of fees on cards issued by Target and Speedway, and Plaintiff fails to attach the relevant agreements to the Complaint, the Court may consider the Target and Speedway Agreements, attached as Exhibits 1 and 2 to the Declaration of William K. Pao, in ruling on Defendants' Motion. *See, e.g., Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661–62 (7th Cir. 2002) (district court properly considered agreement not explicitly referenced in complaint on motion to dismiss because it was "impossible to render the necessary adjudication without reference to" the agreement); *Service By Air, Inc. v. Phoenix Cartage & Air Freight, LLC*, 78 F. Supp. 3d 852, 858 n.2 (N.D. Ill. 2015) (where plaintiff attached incorrect purchase agreement to complaint, considering the proper agreement through incorporation-by-reference doctrine); *Narayan Rao v. Abbott Labs.*, No. 12 C 8014, 2013 WL 1768697, at *3–4 (N.D. Ill. Apr. 24, 2013) (letter not mentioned in complaint was

enrollees that "[y]ou agree that you are intending to form a legally binding contract between yourself and National Payment Card Association."[2] *See* Declaration of William K. Pao, Ex. 2, National Payment Card Association Enrollment Terms and Conditions ("Speedway Agreement") at 1. While Plaintiff's Target and Speedway cards are linked to his Bank of America, N.A. ("BANA") deposit account, BANA does not control the cards' terms or disclosures.

Similarly situated plaintiffs, recognizing that Target alone is responsible for the Target REDcard, previously brought similar class claims against Target over the sufficiency of its fee disclosures. *See Dixon v. Target Corp.*, No. 0:18-cv-02660 (D. Minn. 2018); *Walters v. Target Corp.*, No. 3:16-cv-01678 (S.D. Cal. 2016). Those actions have since settled, and those parties are in the process of securing final approval of the class settlement. The Complaint here is just an attempt by a separate Target REDcard holder and his counsel to manufacture a claim against a different defendant for the same alleged conduct.[3]

While purchases made with "decoupled" cards like the Target REDcard and Speedy Rewards Pay Card may originate as debit card transactions, they are charged to and processed by BANA (and other account-holding institutions) as automated clearing house ("ACH") transactions. Target makes this clear to its cardholders. *See* Pao Decl., Ex. 1, Target Agreement at 1 ("By using your Card, you authorize us to initiate an electronic fund transfer ('EFT') for the

---

incorporated by reference because letter was central to claims). Application of the doctrine is particularly appropriate here, as the Target and Speedway Agreements demonstrate that Plaintiff's theory of breach, and the Complaint's claims, are meritless. *See 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) ("The purpose of the exception is to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents."); *Colander v. Metro. Life Ins. Co.*, No. 17 C 2601, 2017 WL 3816100, at *3 (N.D. Ill. Aug. 31, 2017) ("The purpose of allowing courts to consider certain documents attached to a motion to dismiss 'is to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents.' . . . These reasons . . . are applicable here, where the plaintiff appears to be 'assiduously avoid[ing] mentioning the existence of underlying contract documents between the parties.'") (citations omitted).

[2] The Speedy Rewards Pay Card is issued by ZipLine, formerly known as the National Payment Card Association, a third-party vendor. *See* Pao Decl., Ex. 2, Speedway Agreement at 1.

[3] If that this case proceeds through the pleadings stage, Defendants reserve their right to assert that Plaintiff's claims are barred under the relevant releases in *Walters* and *Dixon*, and seek dismissal of Plaintiff's claims on that basis.

2

full amount of the transaction & any related fees from your designated deposit account at another financial institution."). The Target Agreement even goes so far as to explicitly disclose to cardholders, including Plaintiff, that cardholders could incur the very fees Plaintiff now challenges. *See id.* ("For example, if you use this Card to make a purchase that exceeds the balance in the deposit account that you linked to this Card, that account may become overdrawn even if you chose not to allow overdrafts with respect to a debit card issued by your Depository Bank, & you may incur associated overdraft fees."). The same holds true under the Speedway Agreement. *See* Pao Decl., Ex. 2, Speedway Agreement at 1 ("[Y]ou are authorizing National Payment Card merchants and National Payment Card Association, to initiate ACH (Electronic Check) debit and credit entries to your account at the depository institution designated in the Application and to debit or credit such account.").

Contrary to Plaintiff's allegations, BANA did not assess overdraft fees for non-recurring debit card transactions because his Target REDcard and Speedy Rewards Pay Card are not "debit cards" under the BANA Agreements. *See* Compl., Ex. A, Deposit Agreement and Disclosures ("Deposit Agreement") at 1. A "Debit card," as defined by the Deposit Agreement, is a card used "to pay for purchases at merchants that accept debit cards, to make deposits at Bank of America ATMs, and to withdraw cash from ATMs." *Id*. That definition excludes the Target REDcard and Speedy Rewards Pay Card, which both perform none of those functions. Rather, BANA's Deposit Agreement, the incorporated Personal Schedule of Fees ("Schedule"), and the Card Agreement and Disclosures ("Card Agreement," and together with the Deposit Agreement and Schedule, the "BANA Agreements"),[4] expressly permit BANA to assess overdraft fees for ACH transactions like the Target REDcard and Speedy Rewards Pay Card transactions at issue.

---

[4] The Deposit Agreement, Schedule, and Card Agreement are attached as Exhibits A, B, and C to the Complaint.

3

*See* Compl. ¶ 28 (quoting Compl., Ex. B, Schedule at 13 (explaining that BANA does assess fees "each time [the Bank] authorize[s] and pay[s] any other type of overdraft transaction," including for "ACH transactions")). Accordingly, BANA was expressly contractually permitted to assess overdraft fees for the ACH transactions of which Plaintiff complains and his contract-based claims must therefore be dismissed.

Plaintiff's other claims are equally meritless. Plaintiff cannot recover for breach of the implied covenant because it is not an independent claim under Illinois law, and the implied covenant does not permit the Court to vary from the explicit terms in the BANA Agreements. Plaintiff also cannot recover for unconscionability because he has not pleaded that the applicable terms are "difficult to find, read, or understand," or "so one-sided as to oppress." *Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 754–55 (N.D. Ill. 2015). Plaintiff's claims for conversion and unjust enrichment should be dismissed because, again, the Agreements expressly authorized BANA to assess the fees at issue. Finally, Plaintiff's conclusory class allegations against Bank of America Corporation ("BAC") should be dismissed because Plaintiff's deposit relationship is with BANA, not its corporate affiliate.

## II. ARGUMENT

**A. Plaintiff's claim for breach of contract should be dismissed because the challenged transactions are third-party ACH transactions, which are properly subject to overdraft fees under the BANA Agreements.**

Plaintiff's claim for breach of contract fails because the BANA Agreements expressly permit BANA to assess overdraft fees for ACH transactions, such as Plaintiff's Target REDcard and Speedy Rewards Pay Card transactions. As Plaintiff's agreements with Target and Speedway disclosed, Target and Speedway each charge "decoupled" debit card transactions as ACH transactions to the customer's deposit account. *See* Pao Decl., Ex. 1, Target Agreement at 1 ("By using your Card, **you authorize** us to initiate an ***electronic fund transfer ('EFT')*** for the

4

full amount of the transaction") (emphasis added); Pao Decl., Ex. 2, Speedway Agreement at 1 ("By agreeing to this Agreement, *you are authorizing* National Payment Card merchants and National Payment Card Association, to initiate *ACH (Electronic Check)* debit and credit entries to your account") (emphasis added). Under the BANA Agreements, ACH transactions are eligible for overdraft fees. *See* Compl., Ex. A, Deposit Agreement at 19 (providing that "[o]ther types of transactions includ[ing] checks and other transactions made using [the customer's] checking account number, recurring debit card transactions, *ACH transactions*, preauthorized payments, and automatic and online bill payments" are subject to overdraft fees) (emphasis added). That is exactly why BANA assessed overdraft fees here.

Plaintiff's allegations that the Target REDcard and Speedy Rewards Pay Card are "debit cards" that are subject to overdraft fee protections run counter to the express terms of the BANA Agreements. The BANA Agreements make clear that a debit card is a card used "to pay for purchases at merchants that accept debit cards, to make deposits at Bank of America ATMs, and to withdraw cash from ATMs." *See* Compl., Ex. A, Deposit Agreement at 1. But holders of the Target REDcard and Speedy Rewards Pay Card can do *none* of these things. They can use the Target REDcard and the Speedy Rewards Pay Cards only at Target and Speedway, respectively, as opposed to *all* "merchants that accept debit cards." And they certainly cannot use the Target REDcard and the Speedy Rewards Pay Card to "make deposits at Bank of America ATMs," much less "withdraw cash from ATMs" associated with *any* financial institution.

In an attempt to shoehorn the Target REDcard and the Speedy Rewards Pay Cards into BANA's definition of a debit card, Plaintiff cherry-picks the BANA Card Agreement's reference to an "Access Device," contending that this term somehow transforms the Target REDcard and the Speedy Rewards Pay Card into a debit card for the purposes of the Deposit Agreement. *See*

5

Compl. ¶¶ 19–21. But Plaintiff's argument omits a threshold condition of the BANA Agreements, which precludes Plaintiff's interpretation: The BANA Card Agreement applies only to cards and "Access Device[s]" *issued by BANA*. *See* Compl., Ex. C, Card Agreement at 1 ("This Card Agreement and the applicable Schedule of Electronic Fees and Dollar Limits on Transactions are a contract between you and us regarding your **Bank of America** debit card or ATM card, Business ATM card, or Access Device.") (emphasis added); *see also Konstantelos v. Great Am. Cas. Co.*, 241 Ill. App. 283, 286 (Ill. App. Ct. 1926) (finding modifier applies to the list, because "the disjunctive 'or' in such an expression merely replaces the preceding noun or subject, but leaves the adjective as a qualification"). Other provisions in the Card Agreement reinforce that rule. For example, "Card" is defined as a "personal **Bank of America** debit card, personal ATM card, Business ATM Card, mini card, mobile tag or any other Access Device that is linked to at least one deposit account with us." Compl., Ex. C, Card Agreement at 1.

Further, the context of the entire Card Agreement establishes that "Access Device" means a BANA-issued "Access Device," even if the definition of "Card" does not expressly say so. For example, other provisions in the Card Agreement contemplate that Cards, of which Access Devices are a subset, are issued by BANA. *See id.* ("'You' and 'your' refer to each person to whom we issue a Card . . . ."; and "We," in turn, is defined as "Bank of America, NA"); *id.*, ¶ 2(c) (noting that "When we send you a Card, for your protection, the Card is not activated" and that the party must call a number or complete a transaction to activate the "Card"). Moreover, the Schedule empowers BANA to charge a $5 per card Replacement ATM or Debit Card Fee "for each requested replacement of a card or other debit access device." *See* Compl., Ex. B, Schedule at 9. These provisions would be illogical if a Card or Access Device were to encompass cards or access devices not even issued by BANA. The Court must avoid

such an interpretation. *See Carroll v. Acme-Cleveland Corp.*, 955 F.2d 1107, 1112 (7th Cir. 1992) (rejecting interpretation that would "violate the principle of contract interpretation which requires courts to construe terms so as to avoid rendering other terms redundant or meaningless"). Instead, it should consider the agreements as a whole when interpreting their meaning. *See Air Line Stewards and Stewardesses Ass'n, Local 550, TWU, AFL-CIO v. Trans World Airlines, Inc.*, 713 F.2d 319, 321 (7th Cir. 1983) ("When interpreting a contract under Illinois law, '[t]he intent of the parties to a contract must be determined with reference to the contract as a whole, not merely by reference to particular words or isolated phrases, but by reviewing each part in light of the others.'") (quoting *LaThrop v. Bell Federal Savings & Loan Ass'n*, 68 Ill. 2d 375, 378 (1977)); *Wells Fargo Funding v. Draper & Kramer Mortg. Corp.*, 608 F. Supp. 2d 981, 987–88 (N.D. Ill. 2009) ("[T]he meaning of a word cannot be determined in isolation but must be drawn from the context in which it is used. . . . However much a snippet excised from the broader context of the whole agreement might suit your purposes, the interpretation of the contract cannot turn on that snippet to the exclusion of all else."). When viewed in context, decoupled debit cards, like the Target REDcard and Speedy Rewards Pay Card, are plainly not "debit cards," "Cards," or "Access Devices" covered by the BANA Agreements.

Because (i) the BANA Agreements expressly permit BANA to assess overdraft fees for ACH transactions, such as Plaintiff's Target REDcard and Speedy Rewards Pay Card transactions, and (ii) the Target REDcard and the Speedy Rewards Pay Card are not "debit cards" within the context of the BANA Agreements, a claim for breach of the BANA Agreements does not lie and Plaintiff's first cause of action must be dismissed. *See, e.g., Boone v. MB Financial Bank, N.A.*, 375 F. Supp. 3d 987, 992–95 (N.D. Ill. 2019) (Kocoras, J.)

(dismissing breach of contract claims against bank defendant for imposition of overdraft fees where the relevant agreements were "unambiguous and expressly permit [defendant's] conduct").

> **B.    Plaintiff's implied covenant claim fails with his breach-of-contract claim, and it cannot modify the BANA Agreements, which authorize the overdraft fees at issue.**

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails for the same reason that his breach-of-contract claim fails. As an initial matter, Illinois law does not recognize an independent cause of action for breach of the implied covenant. "While all Illinois contracts contain an implied obligation to act in good faith, this obligation does not provide a person with a separate, independent cause of action." *Hickman v. Wells Fargo Bank, N.A.*, 683 F. Supp. 2d 779, 793 (N.D. Ill. 2010) (citing *LaScola v. U.S. Sprint Commc'ns*, 946 F.2d 559, 565 (7th Cir. 1991)). Because Plaintiff's second cause of action is based on the same allegations as his breach-of-contract claim, which fails to state a claim for the reasons set forth above, Plaintiff's claim for good faith and fair dealing is subject to dismissal. *See Zeidler v. A&W Restaurants, Inc.*, 301 F.3d 572, 575 (7th Cir. 2002) ("[T]he district court correctly dismissed on the pleadings the [ ] remaining claim that [defendant] breached an independent covenant of good faith and fair dealing" because "[t]he covenant is only an aid to interpretation, not a source of contractual duties or liability under Illinois law"); *Boone*, 375 F. Supp. 3d at 995 (Kocoras, J.) (dismissing claim for breach of implied covenant of good faith and fair dealing with prejudice because no independent cause of action exists under Illinois law); *Hickman*, 683 F. Supp. 2d at 793 (same).

Further, the law is clear that the implied covenant does not apply where a party exercises authority expressly reserved to it under the contract. *See Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 395–96 (7th Cir. 2003) ("Illinois law holds that parties to a contract are

8

entitled to enforce the terms to the letter and an implied covenant of good faith cannot overrule or modify the express terms of a contract."). As explained earlier in Section II.A, purchases made with decoupled cards are not "non-recurring debit card transactions" under the BANA Agreements; they are ACH transactions for which BANA expressly reserves the right to assess overdraft fees. *See* Compl., Ex. B, Schedule at 13 (permitting BANA to assess overdraft fees "each time [the Bank] authorize[s] and pay[s] any . . . type of overdraft transaction," including "ACH transactions"). Thus, BANA was simply exercising its authority under the BANA Agreements when it assessed overdraft fees on ACH transactions for Plaintiff's Target REDcard and Speedy Rewards Pay Card purchases. Plaintiff cannot rely on the implied covenant to impose liability on BANA for exercising its contractual rights. *See Cromeens, Holloman, Sibert*, 349 F.3d at 396 ("[C]ases in Illinois clarify that the duty of good faith and fair dealing cannot override an express term of a contract. In short, Volvo cannot be held to have breached the covenant of good faith and fair dealing for simply enforcing the contracts as written.").

      **C.**     **Plaintiff cannot state a claim for unconscionability because the BANA agreements offered fair and clear terms, which Plaintiff accepted.**

To state a claim for unconscionability under Illinois law, a plaintiff must establish "either procedural or substantive unconscionability, or a combination of both." *Sanchez*, 78 F. Supp. 3d at 753. Procedural unconscionability "refers to a contract where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it." *Id*. at 754. Substantive unconscionability, in turn, relates to the contract terms and "the relative fairness of the obligations assumed"; these include "contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Id*. at 755. Here, Plaintiff has failed to satisfy either standard.

First, Plaintiff pleads no facts showing that the terms at issue are "difficult to find, read, or understand." Again, the BANA Agreements make clear what already should be obvious: the BANA Agreements apply *only* to BANA-issued debit cards. The BANA Agreements also expressly entitle BANA to assess overdraft fees for ACH transactions, which is exactly how Plaintiff authorized Target and Speedway to process his Target REDcard and Speedy Rewards Pay Card transactions, respectively. Further, Plaintiff does not—and cannot—allege that BANA somehow pressured or otherwise forced him to accept these terms. Indeed, it is Plaintiff who voluntarily signed up for the Target REDcard and the Speedy Rewards Pay Card, and who did so without any prior notice to BANA.

Second, Plaintiff cannot show that the terms of the BANA Agreements are "so one-sided as to oppress" or are "imbalance[d] in the obligations and rights imposed by the bargain." *Sanchez*, 78 F. Supp. 3d at 755. Plaintiff received two valuable benefits from BANA: (i) the bank facilitated Plaintiff's pursuit of loyalty rewards at Target and Speedway by permitting him to link non-BANA debit cards to his BANA deposit account, and (ii) the bank processed his Target REDcard and Speedy Rewards Pay Card transactions notwithstanding his lack of available funds. In exchange for those benefits, BANA charged an overdraft fee—$35—that is in no way unconscionable. *See, e.g.*, *Saunders v. Michigan Ave. Nat'l Bank*, 278 Ill. App. 3d 307, 317 (1996) (holding that the bank's charging fee of $20 per day on each insufficient funds check was not unconscionable because the plaintiff had her "own role in establishing the charge" by waiting "nearly two months before bringing her account to a zero balance" which "resulted in the excessive charge for the overdraft" and because she "was free to open her checking account in any number of banks").

    **D.    Plaintiff's conversion claim should be dismissed because BANA fully complied with the BANA Agreements.**

Plaintiff cannot recover for conversion because BANA fully complied with the BANA Agreements. To state a claim for conversion under Illinois law, a plaintiff must allege "(1) he has a right to the property at issue; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he has made a demand for possession of the property; and (4) defendant has wrongfully assumed control, dominion, or ownership of the property without authorization." *Song v. PIL, L.L.C.*, 640 F. Supp. 2d 1011, 1017 (N.D. Ill. 2009).

As explained above, the BANA Agreements expressly authorized BANA to assess overdraft fees in connection with the challenged transactions. Because BANA did not wrongfully deprive Plaintiff of any property, Plaintiff's conversion claim should be dismissed as a matter of law. *See, e.g.*, *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002) (affirming dismissal of conversion claim where plaintiff could not "show that the money at all times belonged unconditionally to him" because contract "obligated him to pay [defendants] that money, and the defendants' receipt of that money thus cannot be described as unauthorized or wrongful in the sense that a claim for conversion requires"); *DeGeer v. Gillis*, 707 F. Supp. 2d 784, 789–91 (N.D. Ill. 2010) (dismissing conversion claim where plaintiff had not alleged facts showing that the amounts in question belonged to him at all times); *see also McCammon-Chase v. Circle Family Care, Inc.*, No. 09 C 7450, 2010 WL 2925893, at *7 (N.D. Ill. July 23, 2010) ("[Plaintiff's] conversion claim is nothing more than a breach of contract claim, or a claim 'for money represented by a general debt or obligation.' It is not a claim for conversion. Thus, defendant's motion to dismiss the claim for conversion is granted.").

Further, "Illinois law recognizes no cause of action for conversion of intangible property." *General Motors Acceptance Corp. v. Hartigan Cadillac, Inc.*, No. 86 C 4923, 1990

WL 16295, at *3 (N.D. Ill. Jan. 30, 1990).  Here, Plaintiff contends that BANA wrongfully converted his bank funds when it assessed him overdraft fees for Target REDcard and Speedy Rewards Pay Card transactions.  But courts are clear that funds from "[b]ank accounts are such intangible property for which an action for conversion will not lie as a matter of law."  *Id* (citing *Bachmeier v. Bank of Ravenswood*, 663 F. Supp. 1207, 1225 (N.D. Ill. 1987)).

> E.  **The unjust enrichment claim fails because it relies on plaintiff's deficient breach-of-contract claim, and also because the two claims are mutually exclusive.**

Plaintiff's claim for unjust enrichment should be dismissed.  If a claim for unjust enrichment "rests on the same improper conduct alleged in another claim . . . [it] will stand or fall with the related claim."  *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).  Here, Plaintiff's unjust enrichment claim is derivative of his other claims, *see* Compl. ¶ 79 (incorporating prior allegations by reference); *id*. ¶¶ 81–86 (discussing BANA's alleged improper charging of overdraft fees), and thus is subject to dismissal.  *See, e.g.*, *Braman v. The CME Group, Inc.*, 149 F. Supp. 3d 874, 896–97 (N.D. Ill. 2015) (dismissing unjust enrichment claim where underlying statutory and fraud claims were subject to dismissal); *McMahon v. Bumble Bee Foods LLC*, 148 F. Supp. 3d 708, 715–16 (N.D. Ill. 2015) (same); *Krug v. Am. Family Mut. Ins. Co.*, 227 F. Supp. 3d 942, 946 (N.D. Ill. 2016) (same).

"While a party may plead a claim for unjust enrichment in the alternative where the existence of a valid contract is questioned, if there is no dispute over the existence of a contract, a claim for unjust enrichment necessarily fails."  *Hickman*, 683 F. Supp. 2d at 797.  Here, there is no dispute that the BANA Agreements exist between BANA and Plaintiff.  As a result, Plaintiff's unjust enrichment claim is subject to dismissal on this basis as well.  *See Cromeens, Holloman, Sibert*, 349 F.3d at 397 ("[A] plaintiff may not pursue a quasi-contractual claim where there is an enforceable, express contract between the parties").

Moreover, Plaintiff here not only fails to plead the two claims in the alternative, but he alleges that the Bank has been unjustly enriched *as a result* of its alleged failure to fulfill its express contractual terms. See Compl. ¶¶ 70–87. As this Court has previously ruled under these circumstances, "Plaintiff's reliance on the breach of contract claim to support his claim of unjust enrichment is fatal to the latter claim." *Lyssenko v. Int'l Titanium Powder, LLC*, No. 07 C 6678, 2008 WL 8625903, at *2 (N.D. Ill. May 6, 2008) (collecting cases).

### F. Plaintiff's improper "group allegations" relate to BANA; they provide no basis for keeping BAC, BANA's indirect parent, in this action.

As the BANA Agreements make clear, Plaintiff's deposit relationship is with BANA, not BAC (BANA's indirect parent). See Compl., Ex. A, Deposit Agreement at 2 ("This Deposit Agreement and Disclosures, the applicable Schedule of Fees . . . and other account opening documents for your account are part of the binding contract between you and us . . . ."); *id.* at 4 (defining "us" as "Bank of America, N.A."). In actions between banks and their customers, courts dismiss bank parent companies where the action is based on an agreement between a customer and the subsidiary. *See, e.g., SPD, LLC v. First Banks, Inc.*, No. 15-1443, 2016 WL 2350095, at *3 (C.D. Ill. May 4, 2016) (dismissing action against First Banks, Inc., the holding company of First Bank, that was based on an agreement between First Bank and plaintiffs); *Reinert v. Banc One Corp.*, No. 92 C 8055, 1993 WL 41411, at *1–2 (N.D. Ill. Feb. 18, 1993) (dismissing bank holding company from a consumer action against subsidiary because the holding company was not a party to the trust agreement at issue and had "no relationship with [plaintiff] or the subject matter of this suit except as the shareholder of [the holding company]").

Plaintiff's only allegation against BAC appears in the first paragraph, where Plaintiff attempts to group BAC together with BANA. See Compl. ¶ 1. But "[a] complaint based on a theory of collective responsibility must be dismissed." *Bank of Am., N.A. v. Knight*, 725 F.3d

13

815, 818 (7th Cir. 2013). Courts reject group pleading because it deprives each defendant of notice of the specific claims it will need to defend. *See Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009). "Details about who did what are not merely nice-to-have features of an otherwise-valid complaint; to pass muster under Rule 8 of the Federal Rules of Civil Procedure, a claim to relief must include such particulars." *Atkins v. Hasan*, No. 15 CV 203, 2015 WL 3862724, at *2 (N.D. Ill. June 22, 2015). Accordingly, a complaint fails to state a claim where allegations "throughout the complaint are [] directed to [multiple] defendants" collectively named. *Rysewyk v. Sears Holdings Corp.*, No. 15 CV 4519, 2015 WL 9259886, at *7 (N.D. Ill. Dec. 18, 2015) ("Defendants are correct that KCD IP is not alleged to have done anything other than own the intellectual property for securitization purposes, and that entity is appropriately dismissed from the case."); *see also Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*, No. 16 CV 06113, 2017 WL 4269005, at *3 (N.D. Ill. Sept. 26, 2017) (granting a motion to dismiss because the "complaint's allegations almost never distinguish between 'the defendants' or 'TTI[,]'" effectively alleging that all defendants "committed every action attributed to TTI in the complaint"); *Berger v. PIKR, Ltd.*, No. 14 C 8543, 2015 WL 2208200, at *3 (N.D. Ill. May 8, 2015) (granting corporate defendants' motion to dismiss where "plaintiffs' group pleading [did] not provide each defendant with adequate notice of the claims against it"). For these reasons, all Plaintiff's claims against BAC are independently subject to dismissal.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint with prejudice as to both BANA and BAC.

Dated: October 11, 2019

Respectfully Submitted,
By: /s/ Elizabeth L. McKeen
      Elizabeth L. McKeen

Elizabeth L. McKeen
emckeen@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6994

William K. Pao (admitted *pro hac vice*)
wpao@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Maurice Grant
mgrant@grantlawllc.com
Senija Grebovic
sgrebovic@grantlawllc.com
GRANT LAW, LLC
230 West Monroe Street, Suite 240
Chicago, IL 60606
Telephone: (312) 551-0111
Facsimile: (312) 551-0112

*Attorneys for Defendants Bank of America N.A. and Bank of America Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2019, I electronically filed the foregoing document with the clerk of the U.S. District Court, Northern District of Illinois, using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the electronic Mail Notice List.

Executed on October 11, 2019, at Newport Beach, California.

                                                 /s/ Elizabeth L. McKeen  
                                                       Elizabeth L. McKeen